IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| VALISA FERRIS, | ) | C/A 2:07-3281-JFA-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ACCUSCRIBE TRANSCRIPTION | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq.; 42 U.S.C. § 1981; and the South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. §1-13-10 et. seq.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 23, 2009. After obtaining an extension of time, Plaintiff filed a memorandum in opposition to the motion on April 13, 2009, following which the Defendant filed a reply memorandum on April 23, 2009.

Defendant's motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local (continued...)

1



## **Background and Evidence**[2]

The Defendant provides transcription services for medical reports on contract to various health care facilities (clients). These medical reports are electronically submitted to the Defendant to be edited and/or transcribed during a shift, with each report to then be returned to the client within the specified time. Defendant's Exhibit E, (Haddox Affidavit), ¶ ¶ 2-4. Plaintiff, an African American, was hired by the Defendant to be a Third Shift Editor on July 6, 2005. Defendant's Exhibit A. The third shift was from 11:00 p.m through 7:00 a.m. Plaintiff's husband also worked third shift for the Defendant. Plaintiff's Deposition, pp. 27, 112-113. Plaintiff testified that it was not her preference to work third shift, but that she was told the only positions available were on third shift. Plaintiff's Deposition, pp. 27, 112. However, because of the night work requirement, Plaintiff received a two dollar shift differential in pay, in addition to a regular hourly pay of $13.00 per hour, which made her the highest paid employee on the Defendant's operational staff. See Plaintiff's Exhibit 2; Defendant's Exhibit A; Plaintiff's Deposition, pp. 45-46, 49, 153.

At the time that Plaintiff was hired, she was told there were only openings on the third shift. See Plaintiff's Deposition, p. 27. Plaintiff asserts that the Defendant assigned African American employees to the third shift, while white employees got to work the more preferable first and second shifts. See Plaintiff's Exhibit 2; see also Plaintiff's Deposition, pp. 97, 110-111. Plaintiff

---

[1](...continued)
Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



contends that she reported this discrimination to her employer. [3] See Plaintiff's Brief, p. 13. Plaintiff also testified that, although it was her understanding that she would be placed in the first supervisory position which came open, Andrew Fishburne (white) was offered the supervisor position on third shift shortly after they were both hired.[4] When Plaintiff complained to Monica Haddox, the Defendant's Chief Operating Officer, that she thought the decision to make Fishburne a supervisor was racially motivated; Plaintiff's Deposition, pp. 27, 31-32; Haddox offered Plaintiff the supervisor position on the third shift, which Plaintiff then accepted. Plaintiff's Deposition, pp. 35-43.

Haddox attests that after Plaintiff began working as the third shift supervisor, she violated the Defendant's policy by scheduling herself on multiple occasions to be off on both weekend nights, even though all employees, including shift supervisors, must work at least one shift per weekend. Defendant's Exhibit E (Haddox Affidavit), ¶¶ 10-11. Haddox further attests that on one weekend night Plaintiff did not provide supervisory coverage for her shift, forcing Haddox to fill in as third shift supervisor that night. Id, ¶ 13. On September 1, 2005, Plaintiff received a confidential written warning for allowing a report to remain unassigned throughout an entire shift, resulting in a late delivery to the client; for improperly staffing a shift; for improperly communicating with transcriptionists; and for disregarding counseling sessions. In the employee comment section of this written warning, Plaintiff stated that she "strongly disagree[d]" with the Defendant's assertions, and

---

[3]Although Plaintiff makes this representation in her brief, she has not cited to any evidence in the record to support her claim that she reported this alleged discriminatory conduct. But cf. Plaintiff's Deposition, pp. 102-103.

[4]While it is apparent that Fishburne was hired for first shift based on Plaintiff's testimony, Plaintiff also testified that she thought Fishburne worked a little on third shift too. Plaintiff's Deposition, pp. 47, 91.



further wrote "I resign effectively immediately".  <u>Defendant's Exhibit G</u>.  Plaintiff also submitted a

separate resignation letter.  <u>Defendant's Exhibit H</u>.  Plaintiff testified that because of the way she had

been treated and because she believed "there was some discrimination going on", she had brought this

letter of resignation with her when she came to the counseling meeting.  <u>Plaintiff's Deposition</u>, p. 84.

 Plaintiff then filed an administrative charge of discrimination with the Equal

Employment Opportunity Commission (EEOC) and the South Carolina Human Affairs Commission

(SCHAC) asserting that she had been wrongfully terminated on September 1, 2005 "for reasons that

were falsified", that she received staffing assignments (third shift) and work requirements that white

employees did not receive, that she and other African Americans received disciplinary action for

conduct that white counterparts were not warned or disciplined for, and that all of these actions

constituted race discrimination and retaliation for having engaged in conduct protected by Title VII.

<u>Defendant's Exhibit I</u>.  Following receipt of a right to sue letter, Plaintiff filed her lawsuit in this

Federal Court.  <u>See</u> <u>Complaint</u>, ¶ 2.

**Discussion**

 The Defendant has moved for summary judgment on all of Plaintiff's claims.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the

pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party

must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e),

Fed.R.Civ.P.

4

# I.

## (Race Discrimination Claim)

Plaintiff first asserts a race discrimination claim for disparate treatment in violation of Title VII and 42 U.S.C. § 1981,[5] based on her assertion that she was subjected to racial discrimination when she was assigned to third shift, was subjected to "extra duties" that employees on the first and second shift were not required to perform, and was unfairly disciplined. Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[6] Plaintiff has not offered any direct evidence of race discrimination,[7] and Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of these alleged actions

---

[5]To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [her] race, and that the discrimination interfered with a contractual interest." <u>Denny v. Elizabeth Arden Salons, Inc.</u>, 456 F.3d 427, 434 (4th Cir. 2006). While Defendant contends that Plaintiff was an "at-will" employee, for purposes of Plaintiff's § 1981 claim, it does not matter if she actually had an employment contract or if she was an at-will employee. <u>See</u> <u>Spriggs v. Diamond Auto Glass</u>, 165 F.3d 1015, 1018-1019 (4th Cir. 1999)[holding that even an at-will employment relationship is contractual and may serve as a predicate for a § 1981 claim].

[6]Although <u>McDonnell Douglas</u> is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. <u>See</u> <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; <u>Long v. First Union Corp. of Virginia</u>, 894 F.Supp. 933, 945 (E.D.Va. 1995); <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1063 (8th Cir. 1997).

[7]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).



occurred because of her race under the <u>McDonnell Douglas</u> proof scheme to survive summary judgment.[8]  The undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in <u>McDonnell Douglas</u>.  <u>First</u>, Plaintiff must establish a prima facie case of discrimination.  If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her.  <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions.  <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u> <u>St. Mary's Honor Ctr.</u>

---

[8]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the case.  <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <i>cf.</i> <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc].  However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the <u>McDonnell Douglas</u> analysis.  <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class (African-American). However, Defendant argues that the evidence does not show that Plaintiff was satisfactorily performing her job, that she was subjected to any adverse employment action as that term is defined in the applicable caselaw, or that she received any adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

**Whether Plaintiff was performing her job satisfactorily.** With respect to this prong of the prima facie case, Defendant argues that during the less than two (2) months Plaintiff worked for the Defendant, she was not a competent supervisor, and that she consistently failed to ensure that her shift was adequately staffed or ensure that reports were edited and delivered as soon as possible. To support this argument, Haddox attests that medical reports are electronically submitted to the Defendant to be edited and/or transcribed, and that the Defendant is penalized on a sliding downward monetary scale for late reports or inaccurate reports. Defendant's Exhibit E (Haddox Affidavit), ¶¶ 2-5. Haddox further attests that if a shift is not properly and completely staffed, the Defendant will



not have the manpower necessary to complete the contracted jobs assigned to that shift, and that it is the responsibility of the shift supervisors to ensure that the medical reports assigned to their shifts are completed on time. <u>Id.</u>, ¶ ¶ 6, 14. <u>See also</u> <u>Defendant's Exhibit F</u>, p. 2. Haddox also attests that if a shift does not have proper supervisory coverage, then none of the other employees can perform any work because they are not able to access the medical reports. <u>Defendant's Exhibit E</u> (Haddox Affidavit), ¶ 12.

The Defendant has provided evidence to show that on August 25, 2006 Plaintiff was specifically told of this staffing requirement and that she was to make sure to provide the correct supervisory coverage for her shift. <u>Defendant's Exhibit F</u>, ¶ 6. However, the Defendant's evidence shows that Plaintiff failed to comply with these requirements pursuant to the confidential written warning dated September 1, 2005, which stated that Plaintiff was being counseled for improperly staffing a shift, as well as for failing to properly assign a report (causing it to be delivered to the client late), improperly communicating with medical transcriptionists, and disregarding counseling sessions. <u>See</u> <u>Defendant's Exhibit G</u>. While Defendant's Exhibit G indicates that Plaintiff strongly disagreed with these purported deficiencies in her performance, the merits of her disagreement was not set forth in the exhibit, and Plaintiff inexplicably fails to address any of these alleged deficiencies in her performance (other than the issue of the unassigned report) in her brief opposing summary judgment.[9]

---

[9]In addition to the action at bar, two other employees of this Defendant have filed civil rights cases against this Defendant in this Court, all represented by the same counsel. <u>See</u> <u>Owens v. Accuscribe Transcription Services, LLC</u>, Civil Action Number 2:07-3212, and <u>Manigault v. Accuscribe Transcription Services, LLC</u>, Civil Action Number 2:07-3279. All three of these cases were filed on the same date, and motions for summary judgment are pending in all three cases. Plaintiff's counsel discusses the evidence and arguments with respect to his three clients in all three of his briefs opposing summary judgment in these three cases. For example, in the brief filed in the
(continued...)



With respect to the unassigned report, Defendant's claim is that Plaintiff allowed a report to remain unassigned throughout an entire shift, thereby causing it to be delivered to the client late. Plaintiff testified that that report actually was a holdover from the prior, second shift, and states that the white supervisor for second shift (Christina Lambert) was not reprimanded, while she [the Plaintiff] was. However, according to Plaintiff's own testimony, she actually had no knowledge of when during second shift that report was ready to be processed, nor does she have any direct knowledge of whether Lambert received a reprimand for the report not being completed on second shift. Plaintiff's Deposition, pp. 74-75. Further, while Plaintiff discusses the purported deficiencies in Lambert's performance regarding the unassigned file, she does not dispute her own culpability with respect to the failure to have the report assigned during her own shift.

In any event, even accepting for purposes of summary judgment Plaintiff's argument that a white supervisor was not counseled for having an unassigned report during her shift, when the Plaintiff was, Plaintiff does not address the fact that she also had three *additional* claims of poor performance for which she was counseled, and for which Plaintiff has provided no defense, explanation, or even argument.[10] Because, other than with regard to the unassigned file claim,

---

[9](...continued)
case at bar, counsel makes arguments and representations with respect to what allegedly happened to Plaintiffs Owens and Manigault, and discusses evidence concerning whether they were performing their jobs satisfactorily. However, whether or not Owens and/or Manigault were adequately performing *their* jobs does not help Ferris show that *she* was adequately performing her job for purposes of her disparate treatment claim.

[10]Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's arguments on summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied,513 U.S. 871 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md.1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir.1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997).



Plaintiff has failed to present any argument or point to any evidence to contest or dispute the Defendant's evidence concerning her negative job performance in any way,[11] the undersigned cannot find that Plaintiff has submitted evidence sufficient to create a genuine issue of fact as to whether she was adequately performing her job, one of the necessary prongs for her prima facie case of disparate treatment race discrimination. Therefore, this cause of action must be dismissed. Cook, 988 F.2d at 513 ["[U]nsupported allegations do not establish a prima facie case of race discrimination...."]; Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998) [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."].

## II.

### Hostile Work Environment Claim.

Plaintiff also complains in her Complaint that she was subject to harassment during

---

[11]In her brief, Plaintiff just generally argues that she was subjected to disparate discipline. Such general and conclusory statements do not constitute *evidence* to support a finding that she was adequately performing her job. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; *cf.* Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence]; Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; *cf.* Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of race discrimination...."]; Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination].



the time of her employment with the Defendant, creating a hostile work environment.  To establish

a hostile work environment claim, Plaintiff must present evidence to prove the following elements:

1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of

was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of

employment and to create an abusive work environment; and  4) the conduct is imputable on some

factual basis to her employer. Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir.

2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer

v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388,

393 (4th Cir. 1999).

     Plaintiff argues in her brief that "she was subjected to continuous harassment in

retaliation [12] for reporting the discriminatory actions.  Plaintiff reported the inappropriate actions to

her employer, and was written up and accused of violations that [] either did not occur or similar (sic)

situated Caucasian employees were not disciplined for.  Plaintiff was forced to continue to work in

the hostile work environment until she was wrongfully terminated from her position".  Plaintiff's

Brief, pp. 14-15.  In an earlier part of her brief, Plaintiff argues that "[f]ollowing the reports of

discrimination, Defendant retaliated against Plaintiff for reporting the acts and failed to stop the

discrimination, preferential treatment, and inappropriate behavior, thereby creating a hostile work

environment." Plaintiff's Brief, p. 8.  The evidence presented does not support these arguments.

     First, the discriminatory act the Plaintiff reported was that Fishburne was given the

third shift supervisor position when Plaintiff alleges she had been promised the first available

---

[12]Plaintiff has also asserted a separate retaliation claim, which is discussed in Section III,
infra.



supervisor position. However, Plaintiff herself testified that when she complained to Haddox about Fishburne being assigned the third shift supervisor position, Haddox reversed that decision and instead gave the position of third shift supervisor to the Plaintiff. See Plaintiff's Deposition, pp. 31-32. Therefore, the evidence does not support Plaintiff's argument that, after reporting this alleged discrimination, the Defendant "failed to stop the discrimination".[13]

With respect to Plaintiff's argument that the harassment she endured included being written up and accused of performance violations that either did not occur or that similarly situated white employees were not disciplined for, as has been previously discussed, Plaintiff has presented no evidence to show that the performance violations of which she was accused (including the unassigned file incident) did not occur; see Discussion, Section I, supra; and with respect to Plaintiff's claim that she was counseled for the unassigned file while a similarly situated white supervisor was not, even assuming this assertion to be true for purposes of summary judgment and that it could constitute conduct based on race, it does not by itself constitute conduct sufficient to create a hostile work environment. Cf. Harrington v. Disney Reg'l Entm't, Inc., No. 06-12226, 2007 WL 3036873 at * 12 (11th Cir. Oct. 19, 2007)[finding no hostile environment when an employer allegedly subjected the employee to unfair discipline].

Plaintiff's only other argument with respect to her hostile work environment claim is that she was in general treated badly by Haddox. Part of this argument is based on Plaintiff's claim that third shift was required to do transcription work in addition to editing work, while first and

---

[13]No evidence or argument has been presented to show that Plaintiff was willing to let Fishburne continue as third shift supervisor while she would take the first shift lead editor position that Fishburne retained. Rather, the evidence shows that after complaining to Haddox, Plaintiff ended up with the supervisor position she wanted.



second shifts (populated by white employees) were not. However, there is no evidence to show that having third shift employees perform transcription work created an abusive work environment, or that this work requirement had anything to do with race. Plaintiff herself testified at her deposition that there were periods during third shift when "the work was slower or slow and so there was really nothing to edit." Plaintiff further testified that when she told Haddox that they "didn't have anything to do or whatever", that Haddox told her that they could start transcribing reports so they were not just sitting there doing nothing. <u>Plaintiff's Deposition</u>, p. 61. When asked if that seemed unreasonable, Plaintiff responded "no", that Haddox's request was not unreasonable. <u>Plaintiff's Deposition</u>, pp. 61-62. It hardly seems credible that the Defendant created an abusive work environment for the Plaintiff, or anyone else on third shift, by requiring them to do transcription work during their shift rather than sit there with nothing to do. Plaintiff's testimony also provides no evidence whatsoever to show that there was a racial motivation in this request.

Finally, Plaintiff also complains that Haddox did not respect her and spoke to her in an improper tone of voice. To support this claim, Plaintiff discussed one incident when Haddox yelled at another employee, Candice Manigault,[14] and "talked down to her" when Manigault had asked for a particular day off. Plaintiff described Haddox's conduct as being "par for the course". <u>Plaintiff's Deposition</u>, p. 58. However, this type of general and conclusory assertion, supported by only one specific incident (which itself does not overtly reference race and was directed at another employee), is simply not sufficient to support a finding of severe or pervasive conduct sufficient to alter Plaintiff's conditions of employment and create an abusive work environment. <u>See</u> <u>cf</u>. <u>Cram v. Lamson & Sessions</u>, 49 F.3d 466, 474 (8th Cir. 1995) [sporadic or casual comments are unlikely to

---

[14]One of the three former employees suing the Defendant. <u>See</u>, n. 9, <u>supra</u>.



support a hostile work environment claim]; <u>Jenkins v. New York State Dep't of Corrections</u>, No. 01-754, 2002 WL 205674 at *6-7 (S.D.N.Y. Feb. 8, 2002) [finding that one-time occurrence of verbal harassment and shove that was devoid of any indicia of race based motive may have caused anxiety or embarrassment, but it did not prevent plaintiff from doing his job and was not an adverse employment action]; <u>see</u> <u>also</u> <u>Causey</u>, 162 F.3d at 802 [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; <u>Yarnevic v. Brink's Inc.</u>, 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]; <u>Godoy v. Habersham County</u>, No. 04-211, 2006 WL 739369 at *11 (N.D.Ga. Mar. 21, 2006); <u>Hawkins v. Pepsico, Inc.</u>, 203 F.3d 274, 281 (4th Cir. 2000) [affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"].

Plaintiff's hostile work environment claim should therefore be dismissed.

### III.

### Retaliation Claim.

Plaintiff also asserts that after complaining about disparate treatment on the basis of race, the "Defendant immediately began retaliating against Plaintiff, created an extreme hostile work environment, and wrote up Plaintiff for various violations that were false . . . . once she made the complaints, Defendant, with their Caucasian counterparts, set about a process designed to create a hostile work environment and eventually terminated Plaintiff." <u>Plaintiff's Brief</u>, p. 13.

Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

It shall be an unlawful practice for an employer to discriminate against



> any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

After careful review and consideration of the materials and arguments presented in this case, the undersigned can find no evidence of unlawful retaliation on the part of the Defendant. While Plaintiff clearly engaged in protected activity when she complained about Fishburne being hired in a supervisory position, for the reasons already discussed Plaintiff has failed to show that her allegations of mistreatment she received constituted an "adverse employment action" as that term is



defined in the applicable caselaw, or that this treatment was based on race. First, Plaintiff received the promotion she sought after her complaint about Fishburne's assignment to a supervisory position. It is hard to fathom how that response to Plaintiff's complaint constituted a retaliatory act, since the Defendant's response to her complaint was to give her the position she wanted. Cf. Taylor v Town of Freetown, 479 F.Supp.2d 227, 239 (D.Mass. 2007)[Finding no evidence of retaliation in shift assignment where Plaintiff requested the shift in question]. Further, as previously discussed, Plaintiff has failed to present any evidence to show that she did not commit the performance deficiencies claimed by the Defendant and as is shown in its evidence, nor has she presented any evidence (with the possible exception of the unassigned file claim) to show that she was disciplined for this conduct when similarly situated white employees were not, or that the reason she was disciplined for this conduct was because she had previously complained of racial discrimination. Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"].[15]

---

[15]It is also worth noting that Plaintiff makes several contradictory claims and arguments in her brief. For example, Plaintiff argues that she only complained to her "supervisor" about the Defendant's discriminatory actions, because she could not complain to Haddox since Haddox was the one involved in the discriminatory actions. Plaintiff's Brief, p. 5. However, Plaintiff testified at her deposition that she *did* complain to Haddox about the allegedly discriminatory conduct. Plaintiff's Deposition, p. 32. Plaintiff also argues in her brief that the "Defendant falsely accused Plaintiff and other African-American employees of being late on turning in their reports." Plaintiff Brief, p. 8. In her deposition testimony, however, Plaintiff makes no claim that she was "falsely"
(continued...)



Even with respect to the unassigned file, and Plaintiff's claim that a white supervisor was not disciplined for engaging in this same conduct, Plaintiff has provided no basis to connect this event to her protected activity other than her own surmise and speculation. Boden, 978 F.Supp. at 659 [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; House, 824 F.Supp. at 485. In any event, Plaintiff having received a written warning about this incident is not, by itself, an adverse employment action for purposes of a retaliation claim. See generally, Lewis v. Forest Pharmaceuticals, Inc., 217 F.Supp.2d 638, 648 (D.Md. 2002) ["Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment."] (citing Nye v. Roberts, 159 F.Supp.2d 207, 213 (D.Md. 2001) vacated and remanded on other grounds, 2002 WL 31163732 (4th Cir. 2002)); White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008)["In general, a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary . . . . thus, to characterize a negative performance evaluation as an adverse employment action the Plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation."] (internal citations omitted); Williams v. Board of Educ. of Chicago, No. 07-6997, 2009 WL 140124 at * 4 (N.D.Ill. Jan. 21, 2009)["A negative performance evaluation, without more, does not rise to the level of an adverse employment action."]; Jackson v. City University of New York, No. 05-8712, 2006 WL 1751247 at * 4 (S.D.N.Y. June 26, 2006)[A negative

---

[15](...continued)
accused with respect to the report at issue in her counseling memo; rather, her only complaint is that she was disciplined for this deficiency while a white supervisor allegedly was not. Plaintiff's Deposition, pp. 75-76.



evaluation without any effect on employment does not constitute a materially adverse employment action]; Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006)[explaining that retaliation provision was intended to protect employees from a broader array of employer actions than the substantive discrimination provisions, and that the inquiry in a retaliation case is whether the alleged negative employment action "might have dissuaded a reasonable worker from making or supporting a change of discrimination."]; Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n. 1 (N.D.Ill. 2003)[criticism, including a negative performance review or development plan, does not constitute an adverse employment action]. Plaintiff's general and conclusory claim of ill treatment by Haddox, such as that she was spoken to in a poor or condescending tone of voice, also fails to meet this standard. See Cooper v. Southern California Edison Co., 170 Fed.Appx. 496, 498 (9th Cir. 2006) ["[A]ny potential ridicule and ostracism (plaintiff) suffered was not an adverse employment action."]; Manatt v Bank of America, 339 F.3d 792, 803 (9th Cir. 2003) [Allegations that plaintiff's supervisor stared at her in an angry way and that co-workers were being mean to her were insufficient to show an adverse employment action]. See also Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981), cert. denied, 454 U.S. 892 (1981); cf. Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)["A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"]; Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) [a "bruised ego" is not enough]; Geisler v. Folsom, 735 F.2d 991, 994-996 (6th Cir. 1984) [no "adverse employment action" where evidence failed to establish any more than bad relations between plaintiff and her supervisor].



Finally, with respect to Plaintiff's claim that the treatment she received, including her written warning, effectively forced her to resign; i.e. that she was constructively discharged, even if the Court were to consider Plaintiff's constructive discharge claim as a claimed "adverse employment action" for purposes of her retaliation claim, Plaintiff has simply presented no evidence to support her allegation that she was constructively discharged. In order to establish a claim for constructive discharge, Plaintiff must have been subjected to employment practices which were both discriminatory and which made her working conditions intolerable, thus forcing her to quit. Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002) ["Constructive discharge occurs 'when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign'....The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit."]; Amaker v. Winn-Dixie, Greenville, Inc., No. 95-1254, 1995 WL 706873, at **1 (4th Cir. December 1, 1995); EEOC v. Federal Reserve Bank of Richmond, 698 F.2d 633, 672 (4th Cir.), rev'd in part on unrelated grounds, 467 U.S. 867 (1984)(emphasis added); see Vitug v. Multistate Tax Comm'n, 88 F.3d 506, 517-518 (7th Cir. 1996); EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); Diamond v. T. Rowe Price Associates, Inc., 852 F.Supp. 372, 397 n. 123 (D.Md. 1994); Bickford v. Denmark Technical College, 479 F.Supp.2d 551, 559 (D.S.C. 2007); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998); Elemore v. Aaron Rents, Inc., No. 07-1328, 2008 WL 4449683 at * 4 (D.S.C. Sept. 30, 2008).

To succeed on this claim, Plaintiff must present evidence to show both deliberateness and intolerability. "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit...." Bristow v. Daily Press, Inc., 770 F.2d 1251,

19



1255 (4th Cir. 1985).  As for intolerability,

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign....Rather, intolerability is...assessed by the objective standard to whether a reasonable person in the employee's position would have felt compelled to resign.

Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996), overruled in part on other grounds, Oubre v. Entergy Operations, Inc., 522 U.S. 422, 428 (1998).

The evidence presented is not sufficient to meet this standard.  After her complaint of discrimination, Plaintiff was given the promotion she desired.  Thereafter, the written counseling she received on September 1, 2005 was just that, a written counseling with a list of corrective actions she should take to improve her performance.  Plaintiff has presented no evidence whatsoever to show that Haddox or anyone else in the Defendant's management was seeking to have her dismissed prior to that day.  Plaintiff's testimony that Haddox generally spoke to her in a disrespectful tone of voice (for which she provided only on one specific example, which was directed to another employee, not the Plaintiff) is simply not sufficient evidence to create a genuine issue of fact as to whether Plaintiff's working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign.  See Matvia v. Bald Head Island Mgmt., 259 F.3d 261, 273 (4th Cir. 2001) [Denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position...would not have compelled the reasonable person to resign.  These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable."]; Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) ["Dissatisfaction with work assignments, feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."]; Drake, 134 F.3d at 886 ["More than ordinary discrimination is

20



necessary to establish a constructive discharge claim; in the 'ordinary' case, an employee is expected to remain employed while seeking redress"]; <u>see also</u> <u>Bolden v. PRC, Inc.</u>, 43 F.3d 545, 552 (10th Cir. 1994), <u>cert. denied</u>, 516 U.S. 826 (1995). Therefore, Plaintiff's claim that she was constructively discharged from her employment in retaliation for having complained about alleged discrimination is without merit.

Plaintiff's retaliation claim should be dismissed.

## IV.

## SCHAL Claim.

With regard to Plaintiff's South Carolina Human Affairs Law claim, this claim is evaluated under the same standards as are used for evaluating Plaintiff's claims under Title VII. <u>See</u> <u>Orr v. Clyburn</u>, 290 S.E.2d 804, 806 (S.C.1982); <u>Tyndall v. National Education Centers</u>, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); <u>cf.</u> <u>Cromer v. Greenwood Com'n of Public Works</u>, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.] Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII, <u>supra</u>, also applies to any claims Plaintiff has asserted under the South Carolina Human Affairs Law, and this claim should therefore be dismissed.

## V.

## Public Policy Claim.

Finally, in her response to the motion for summary judgment, Plaintiff appears to argue that she was discriminated against and wrongfully discharged in violation of a clear mandate of public policy of the State of South Carolina. <u>Plaintiff's Brief</u>, p. 15. While it does not appear that Plaintiff



asserted any such claim in her complaint, and no such claim has been argued by the Defendant in its briefs, out of an abundance of caution[16] the undersigned has addressed this claim on the merits.

Plaintiff's wrongful discharge/public policy cause of action (to the extent one has been asserted) should be dismissed because this claim is based on the same allegations which support her claims arising under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and also because Plaintiff has failed to allege that the cited conduct constituted a crime and/or that the Defendant required her to commit a crime. In <u>Ludwick v. This Minute of Carolina, Inc.</u>, 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee[17] constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". <u>Id</u>, at 216. <u>See</u> <u>also</u>; <u>Culler v. Blue Ridge Electric Cooperative, Inc.</u>, 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; <u>Barron v. Labor Finders of South Carolina</u>, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009); although some other situations may also apply. <u>See</u> <u>Washington v. Purdue Farms, Inc.</u>, No. 07-3552, 2009 WL 386926 at * 12 (D.S.C. Feb. 13, 2009)["Several types of public policies have been deemed appropriate to sustain this cause of action including: requiring an employee to violate the criminal law, where the reason for the employee's termination was itself a violation of criminal law, obeying a subpoena, refusing to contribute money to a political action fund,

---

[16]Since Plaintiff's counsel uses similar arguments in all three of the pending cases against the Defendant, the undersigned has also addressed this as a possible claim in those other cases.

[17]Plaintiff does not contest that she was an at-will employee.

22



and invoking rights under Payment of Wages Act."] .

Plaintiff has failed to identify any public policy violation with respect to this claim. Rather, Plaintiff argues that it was a violation for the Defendant to discriminate against her based on her race and in retaliation for complaining about racial discrimination. Plaintiff's Brief, pp. 14-15. Even assuming the Defendant did deny Plaintiff her rights under Title VII or § 1981, however, that is not the commission of a crime, nor is there any allegation that the Defendant required Plaintiff to violate a public policy. Lawson v. South Carolina Dept. of Corrections, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; Eady v. Veolia Transp. Services, Inc., 609 F.Supp.2d 540, 559 (D.S.C. 2009)[Plaintiff failed to show violation of public policy where he claimed that he was terminated for refusing to sign a blank affidavit]; King v. Charleston County School District, _____ F.Supp.2d _____, 2009 WL 3397598 at * 11 (D.S.C. May 21, 2009); Love v. Cherokee County Veteran's Affairs Office, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting Rule 12 motion to dismiss where no inference could be drawn from the facts alleged that the Plaintiff's termination was in violation of a criminal law]; Barron v. Labor Finders of S.C., 2009 WL 1520820, at * 3 (S.C.Ct. App. May 29, 2009)[No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]; Washington, 2009 WL 386926 [Dismissing public policy claim where employer purportedly denied employee's request for FMLA leave, which neither violated a criminal law nor required the employee to do so]; Merck v. Advanced Drainage System, Inc., 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Hence, while Plaintiff alleges she was discriminated and retaliated against and



constructively discharged, it was not because of the violation of any clearly mandated "public policy" as defined by the South Carolina Courts, but because of an alleged violation of her personal rights. The public policy exception for the discharge of an at-will employee encompasses only "public rights", not "private" rights, and Plaintiff has therefore failed to set forth a valid claim for wrongful discharge in violation of the public policy of South Carolina.  See Weinberger v. MCI Telecommunications, Inc., No. 92-2550, 1994 WL 18081 at * 3 (4th Cir. Jan. 25, 1994) ["The public policy exception encompasses only public rights granted by existing law, not private rights."].

In any event, the South Carolina Supreme Court has explicitly held that "[w]hen a statute  creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); Washington, 2009 WL 386926 at * 12 n. 12. Here, Plaintiff seeks a remedy for her claims under Title VII, § 1981, and SCHAL, and as Plaintiff has a statutory remedy for her claims, she may not pursue a separate state law cause of action.  Palmer, 2006 WL 2708278, at * * 3 and 5; Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)[Finding that Plaintiff's public policy termination claim was appropriately dismissed: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law.  It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"]; Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."]  (quoting Stiles v. American General Life Ins.

24



Co., 516 S.E.2d 449, 452 (S.C. 1999)); <u>Dockins v. Ingles Markets, Inc</u>., 413 S.E.2d 18, 19 (S.C. 1992); <u>Epps v. Clarendon County</u>, 405 S.E.2d 386, 387 (S.C. 1991).

Therefore, the Defendant is entitled to dismissal of Plaintiff's claim for wrongful discharge/public policy claim, assuming such a claim has properly been asserted in this case.

<strong>Conclusion</strong>

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

January 4, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

